Argued February 25, decided March 31, 1908.

## STEEN v. WEISTEN.

[94 Pac. 834.]

Vendor and Purchaser—Misrepresentations by Vendor—Fraud—Sufficiency of Evidence.

1. In an action to annul the sale of a tract of land and to recover a part payment thereon, evidence examined and *held* to show that defendant fraudulently represented the value of the land and the purposes for which it could be used.

Vendor and Purchaser—Rescission by Purchaser—Fraud—Defenses.

2. A person cannot, with intention to mislead a purchaser by deceiving him concerning facts of which he is in the dark, sell him land for one purpose, and then in a suit in equity, brought to annul the transaction by reason of such crafty device, defend on the grounds that, while he knowingly and willfully deceived the purchaser in the manner claimed, the grantee will lose nothing thereby, if he will avail himself of the lands for some other or different purpose designated by the grantor.

Fraud—Representations—Negligence In Believing.

3. Where one assumes to have knowledge of a subject of which another may be ignorant, and knowingly makes false representations regarding it, upon which the other relies to his injury, the party who makes such statements, will not be heard to say that the person who took his word and relied upon it, was guilty of such negligence, as to be precluded from receiving compensation for injuries which were inflicted on him under cover of the falsehood.

From Multnomah: Melvin C. George, Judge.

This is a suit to set aside and annul the sale of a tract of land in Lane County; to recover $1,100 advanced as a part payment thereon, and to enjoin the collection of two certain promissory notes amounting to $2,000 secured by mortgage on said property. From a decree in favor of plaintiff, the defendant appeals.          Affirmed.

For appellant there was a brief with an oral argument by *Mr. Theodore J. Geisler.*

For respondent there was a brief with an oral argument by *Mr. William A. Cleland.*

Opinion by MR. COMMISSIONER KING.

This is a suit by Ole J. Steen against O. J. Weisten to annul the sale of a tract of land in Lane County, to recover $1,100 advanced as part payment thereon, and to enjoin the collection of two promissory notes of $1,000 each, secured by a mortgage on the property, and comes here on an appeal from a decree in plaintiff's favor.

1. The evidence discloses that in the early spring of 1905 Steen came from North Dakota to Portland, having in view the purchase of timber land, with the intention of engaging in the sawmill and lumbering business. After a brief acquaintance with defendant he apprised him of his intentions, in response to which Weisten informed Steen that he owned a half section of fine timber land, which he would sell at a very low figure, which he fixed at $3,500. When questioned as to its character in respect to timber suitable for his purposes, defendant replied, in substance, that he had been here a good many years— over Oregon and Washington—and had seen lots of timber, but this land contained the best timber he had ever seen, for which it was very valuable. Steen indicated he would go and examine it, with the object of purchasing, if as represented, to which defendant acceded, but suggested that it would be an expensive trip as well as a very difficult one to make at that season of the year, as it was far from the railroad and the stage was probably not running, which would require a long and circuitous trip around the mountains to reach the land. Plaintiff, however, decided to examine the property, and started the following morning, but, missing the steamer, the trip was abandoned. After some deliberation, and with further assurances by defendant that it was the kind of property desired, the sale was consummated.

The consideration agreed upon was $3,100, of which $1,100 was paid in cash at the time, the balance being represented by two notes of $1,000 each, payable November,

1905, and November, 1906, respectively, with interest, secured by a first mortgage on the property, with the further understanding that no timber should be removed until the first note was paid. Plaintiff went back to North Dakota, and, after some correspondence in reference to the purchase of the mill which Weisten had told him was near the land, returned and at once proceeded to the scene of his purchase which, on examination, proved to be practically worthless. Four citizens, residents in the vicinity of the property, testify to the effect that the land is of but little, if any, value, with no mill nearer than two miles, and the timber near it worked out, and no practicable route through which a road from the land to any mill or market could be built without enormous expense; that the land is rocky and precipitous, containing some small trees and a growth of underbrush, with a very limited number of trees of second-class quality suitable for piling, but none fit for lumber. A summary of the facts as established by the great weight of the testimony is contained, we think, in the answer of Simon H. Hoffman, a witness for plaintiff, when, in response to an interrogatory as to the character of the property, he said: "Yes; I am acquainted with the land, and there is really no timber of any value on this piece of land. I couldn't place any value on it, because there is no timber there to place value on. It has been burnt off, and there is nothing there except old logs and wind-fallen stubs. There has been none since I have been in the country—about 25 years. It is very mountainous—canyons covered with brush and fallen timbers and such as that."

Only a faint attempt is made by defendant to contradict the testimony of plaintiff's witnesses. In fact, his testimony is evasive, and can only be held to dispute the evidence adduced by plaintiff in respect to language used, or manner of stating it. He states that he told him there was "some" timber on it; that there was some cedar

there, etc. He makes no denial, except by this method of answering, of the charge that he represented it as a good investment for the lumbering business, but indicates that it is a good proposition for one desiring to engage in the sale of piling, and that there are a large number of trees there suitable for that purpose—to the extent, says his principal witness, of from 30 to 35 acres, containing about 5,000 linear feet per acre, all of which is disclosed and practically conceded to be of poor quality even for that purpose.

It also appears, and is not controverted, that defendant purchased the property from the State, paying the 25 cents per acre required by law, and decided to examine it before paying the remaining $400, which was not done until this sale was made, when payment thereof became necessary in order to close the deal, and that when he saw the property he pronounced it practically worthless, except as a range for stock, and expressed an intention of clearing and seeding it to grass for that purpose.

2. The principal defense relied upon appears to be that the land is of considerable value because of the timber thereon suitable for piling; but we think this insufficient. It was not purchased for that purpose. A person cannot, with intention to mislead a purchaser by deceiving him concerning facts of which he is in the dark, sell him land for one purpose, and then in a suit in equity, brought to annul the transaction by reason of such crafty device, defend on the grounds that, while he knowingly and willfully deceived the purchaser in the manner claimed, the grantee will lose nothing thereby, if he will avail himself of the lands for some other or different purpose designated by the grantor. For example, A. could not, by this method, sell to B. placer mining ground, and, in a suit to set aside the sale, admit its worthlessness for the project contemplated, and, as a defense thereto, insist that it would make an excellent brickyard. This "gold

brick" method cannot be sanctioned in a court of equity. It comes within the well known maxim, "He that hath committed iniquity cannot have equity."

3. It is also urged that plaintiff should not have taken defendant's word, but that it was his duty to examine the property; that he told plaintiff he had not cruised it, etc. It is settled that, "where one assumes to have knowledge of a subject of which another may be ignorant, and knowingly makes false representations regarding it, upon which the other relies to his injury, the party who makes such statements will not be heard to say that the person who took his word and relied upon it was guilty of such negligence as to be precluded from recovering compensation for injuries which were inflicted on him under cover of the falsehood": David v. Moore, 46 Or. 143, 156 (114 Am. St. Rep. 858: 79 Pac. 415, 417).

Plaintiff having established, by clear and explicit evidence, the fraud complained of, it follows that the decree of the court below should be affirmed.      AFFIRMED.