Argued at Pendleton May 7, affirmed June 26, rehearing denied July 24, 1923.

## CARTY *v.* McMENAMIN & WARD.

### (216 Pac. 228.)

**Appeal and Error—Assignments not Argued are Deemed Waived.**

1. Assignments of error, not argued or referred to in appellant's brief, are deemed to have been waived.

**Fraud—Party Defrauded can Affirm Contract and Recover Damages.**

2. A party who was induced to enter into a contract by fraudulent misrepresentations need not rescind the contract, but can elect to affirm it and recover the damages suffered by reason of the misrepresentations, and, where he made no attempt to return possession of the property acquired under the contract, his complaint must be treated as one in deceit for damages and not one to rescind the contract.

**Fraud—Complaint Held Sufficient.**

3. A complaint alleging representations claimed to be false and material, the defendant's knowledge of the falsity of the representations, and averring the true facts, followed by allegations that defendants knowingly made the representations with intention that plaintiff should act upon them, and that plaintiff did so act to his injury, is sufficient to state a cause of action in deceit.

**Fraud—Complaint Held to State Only One Cause of Action.**

4. A complaint alleging that defendants represented to plaintiff that they had a lease on grazing land which they desired to hold but for which they had no sheep that season, and that they would lease the land for the season to the plaintiff at cost to them, with representations as to the quality of the land, that the representations were false, and that plaintiff was damaged in a stated sum by reason of the falsity thereof, states only a cause of action in deceit for damages, so that it was not error to refuse to require plaintiff to elect upon what ground of action he would rely in the trial of the case.

**Fraud—Negligence in Relying on Fraudulent Misrepresentations cannot be Claimed.**

5. Where defendants assigned to plaintiff a lease for grazing land, which was situated seventy-five miles from plaintiff's residence, knowing that he could not personally examine the same, and made false representations as to the quality of the land, intending that he should rely thereon, they cannot defeat his recovery of damages, suffered by reason of the fraud, on the ground that he was negligent in relying on the representations.

**Evidence—Provision in Contract Fraud is not Defense is Void.**

6. In a contract procured by fraudulent representations, a provision that the defendants made no representations as to the value or quality of the property is no defense to an action for damages resulting from the fraud, since a party guilty of fraud in making a contract cannot exculpate himself from the consequences of his own wrong by a provision in writing that his fraudulent oral representations shall not be used against him.

**Trial—Nonsuit not Granted, if Competent Evidence Supports Each Essential Allegation.**

7. A nonsuit will not be granted, if there is some competent evidence produced by plaintiff in support of each material allegation in his complaint.

**Trial—Motion for Directed Verdict Raises Similar Questions as Motion for Nonsuit.**

8. A motion for directed verdict presents the same question as a motion for a nonsuit, so far as it relates to the evidence.

**Fraud—Preponderance of Evidence Sufficient.**

9. Subdivision 5, Section 868, Or. L., providing that a preponderance of the evidence controls in a civil case, applies to a civil action to recover damages for fraud.

**Appeal and Error—Jury are Sole Judges of Credibility of Evidence.**
10.   Under Constitution, Article VII, Section 3c, providing that no fact tried by jury shall otherwise be re-examined in another court, unless the court can affirmatively say there is no evidence to support the verdict, the jury are the exclusive judges of the credibility of the witnesses and of the weight to be given to the testimony adduced upon the trial, and the verdict for plain-tiff cannot be reversed on appeal if there is some competent evidence in support of each material allegation of the complaint.

From Morrow: D. R. PARKER, Judge.

In Banc.

This is an action for damages, growing out of a sale of grazing privileges on lands situate in the State of Washington.

James Carty, the plaintiff, engaged in the sheep business, is a resident of Morrow County, Oregon. The defendants are partners engaged in the sheep business, with headquarters in the State of Washington. Likewise, they list summer range for livestock and lease it to persons desiring the same. One of the defendants also maintains an office at Heppner, Oregon, where the contract hereinafter referred to was made.

In the early spring of 1920, the plaintiff leased from the defendants a tract of land consisting of over 13,000 acres, situate near Six Prong, in the State of Washington, the consideration paid therefor being twenty cents per acre, or a total of $2,691.80, together with expenses in the amount of $20.

It is asserted that the defendants represented to plaintiff that they were desirous of procuring for themselves, for a term of years, the above-mentioned tract of land, as summer range for sheep, and that with his co-operation they could do so; that they were not prepared to use the range for the year 1920 on account of lack of stock, but that if plain-

tiff would take the land for the season of 1920 they
would procure the right to graze the range and let
it to him at cost price to them; that the plaintiff, re-
lying upon the representations of defendants as to
the cost per acre and the quality of the range, ac-
cepted the offer. Plaintiff claims that he later dis-
covered that he had been deceived, in this: that the
cost price to defendants was fifteen cents per acre,
and not twenty cents as represented, and that they
had been at no expense in procuring the lease; fur-
ther, that when his sheep were driven to the lands in
question, he found that the lands leased to him were
wholly worthless for summer range.

In addition to the foregoing, the complaint avers
that this tract of land was situate about seventy-five
miles from plaintiff's residence, and, it being difficult
for plaintiff personally to examine the same, he re-
quested that it be examined for him, whereupon, at
defendants' request, one James Farley was taken to
Washington for the purpose of making an examina-
tion of the range. The complaint further alleges that
other and better range was fraudulently shown to
Farley by defendants, with the representation that
it was of the character of the range that was being
procured for plaintiff by defendants; that Farley re-
turned without examining the range involved herein,
and, on account of the deception practiced upon him,
reported favorably to the plaintiff upon that range.

"That said representations that said range was
summer range for sheep; that the defendants were
procuring the same from other persons for the plain-
tiff; that the defendants desired to hold said range
for themselves for the 1921 summer season; that they
had to pay the sum of twenty cents per acre there-
for; that James Farley had been upon and examined
said range, and that the expenses of procuring said

range for the plaintiff were $20, were each and all false, and the defendants knew them to be false, and the defendants made said false and fraudulent representations to the plaintiff with intent to deceive, cheat and defraud the plaintiff, and for the purpose of inducing the plaintiff to purchase said grazing privileges without an examination thereof, and to pay therefor the sum of twenty cents per acre, and to pay the further sum of $20 pretended expenses, when in truth and fact said range was not summer range at all, and was of no value for that purpose; that the defendants were the owners of the grazing privileges on said lands on April 20, 1920, when they first consulted the plaintiff concerning the leasing thereof; that they paid for said range only fifteen cents per acre, and were out nothing whatever as expenses in procuring said range for the plaintiff.''

The complaint then avers plaintiff's ignorance of the falsity of the defendants' representations, and that he, believing such representations to be true, relied thereon.

To this complaint a general demurrer was filed, which was overruled by the court.

. The defendants, answering, denied the allegations contained in the complaint, except the allegation of the partnership of defendants and of the sale of grazing rights by them to the plaintiff.

Defendants, further pleading, made separate answer and defense to the complaint, and averred, among other things,—

''That at no time did defendants, or either of them, make any representations that they had any knowledge of the character of said lands for summer range, or of the value or grazing quality of the same, or warrant in any manner such grazing, but, on the contrary, the plaintiff was duly informed by them that he could purchase only defendants' grazing rights at his own risk and responsibility; that he was warned

·and should personally inspect said lands and range before such purchase by him, and that in the contract of transfer to him by defendants thereof, he expressly waived any representations respecting the character, value or grazing quality of such range in the deal.''

Plaintiff replied, and upon trial a verdict was returned by the jury, assessing plaintiff's damages in the sum of $1875.80.

Defendants contend in their brief that—

''The court erred—

''In overruling the demurrer to the complaint;

''In not compelling plaintiff to elect upon which ground of action he would pursue;

''In not granting our judgment of nonsuit;

''And in not instructing the jury to find for defendants.''

AFFIRMED.    REHEARING DENIED.

For appellants there was a brief over the names of *Mr. Thomas Mannix, Mr. C. H. Finn* and *Mr. F. A. McMenamin,* with an oral argument by *Mr. Mannix.*

For respondent there was a brief over the name of *Messrs. Woodson & Sweek,* with an oral argument by *Mr. C. L. Sweek.*

BROWN, J.—1. The bill of exceptions discloses a number of assignments of error relating to the reception of evidence to which we make no reference in this opinion. We deem all assignments of error not referred to in appellants' brief to have been waived.

In the case of *Tracy* v. *Juanto,* 103 Or. 416 (205 Pac. 822), this court, speaking through Mr. Justice RAND, said:

''Where no argument is presented in appellant's brief upon an assignment of error, it is deemed to

have been abandoned and waived.   See *Miller Lumber Co.* v. *Davis,* 94 Or. 507, 515 (185 Pac. 462); *Donohoe* v. *Portland Ry. Co.,* 56 Or. 58, 61 (107 Pac. 964); *Cody* v. *Black,* 97 Or. 343, 345 (191 Pac. 319, 192 Pac. 282)."

To like effect are *Hahn* v. *Mackay,* 63 Or. 100 (126 Pac. 12, 991); *Domurat* v. *Oregon W. R. & N. Co.,* 66 Or. 135 (134 Pac. 313).

The first question presented is: Does the complaint state facts sufficient to constitute a cause of action?

2. The defendants, in their opening brief on appeal, say:

"From an inspection of the pleadings this action was brought by respondent, apparently, to rescind the contract of assignment of the said pasturage and recover the entire consideration paid therefor."

The plaintiff's theory of the case is, that it is not a suit for rescission of the contract, but an action for damages for false and fraudulent representations which induced the plaintiff to enter into the contract. At no time did the plaintiff attempt to rescind the contract. He chose to affirm the contract and get what feed he could for his sheep upon the leased range and bring an action for damages against the defendants for their alleged fraudulent representations. The plaintiff had a right to elect the remedy to be pursued in this litigation: *Scott* v. *Walton,* 32 Or. 460, 464 (52 Pac. 180, 181); *Seeck* v. *Jakel,* 71 Or. 35 (141 Pac. 211, L. R. A. 1915A, 679; and the cases there collected).

"It is often difficult, especially under the Code system of pleading, to determine the real cause of action set out in a pleading alleging fraud. But, where the facts stated establish a cause of action for deceit, it is ordinarily immaterial by what name the action is designated. Since an action of deceit based on fraud

in the procurement of a contract proceeds upon the theory of affirmance of the contract, the fact that the contract is set out as a matter of inducement does not stamp the action as one *ex contractu;* * * and an averment indicating that the action is based on contract may be disregarded if there are' substantial averments of fraud. Where the complaint states a good cause of action for fraud and deceit, allegations relating to a rescission of the contract may be disregarded." 27 C. J., § 145, p. 29.

The complaint in the instant case could not sustain a suit to rescind the contract. When Carty made his alleged discovery of fraud, he made no offer to return his right to graze the lands under the contract, promptly, or at all. But, on the other hand, he retained possession of the lands and exercised his right to depasture his sheep thereon, and filed this action for damages on account of the averred fraud practiced upon him by the defendants.

3. In *Riddle* v. *Isaacs,* 97 Or. 404 (192 Pac. 398), this court, by Mr. Justice BURNETT, wrote:

"In order to be a good pleading of fraud, the representations claimed to be false must be stated. The truth must be averred, so that the court may determine the falsity of the representations alleged to be fraudulent. It must appear that the individual making them knew they were false, and that he intended thereby to perpetrate a fraud; and, finally, that the party seeking to be relieved from the fraud relied upon such representations. This is the doctrine taught in *Rolfes* v. *Russell,* 5 Or. 400; *Dunning* v. *Creson,* 6 Or. 241; *Wimer* v. *Smith,* 22 Or. 469 (30 Pac. 416); *Martin* v. *Eagle Development Co.,* 41 Or. 448 (69 Pac. 216); *Bailey* v. *Frazier,* 62 Or. 142 (124 Pac. 643); *Smith* v. *Anderson,* 74 Or. 90 (144 Pac. 1158); *Waller* v. *City of New York Ins.' Co.,* 84 Or. 284 (164 Pac. 959, Ann. Cas. 1918C, 139)."

Measured by the established rule of a good pleading of fraud, the complaint in the instant case is sufficient. It sets forth the representations claimed to be false, and their materiality. It avers the falsity of such representations and knowledge upon the part of the defendants of their falsity. It avers what it claims to be the truth. It alleges that the defendants knowingly made the representations with the intention that the plaintiff should act upon them, and that he did act in full reliance upon such representations, to his injury. The demurrer to the complaint was properly overruled.

4. There is no merit in the defendants' assignment of error involving the ruling of the court in denying the defendants' motion to require plaintiff to elect upon which ground of action he would rely in the trial of the case. The complaint shows that Carty is relying upon his charge of fraud and deceit upon the part of the defendants, and his complaint states but one cause of action: *Summers* v. *Geer*, 50 Or. 249 (85 Pac. 513, 93 Pac. 133).

5. In support of their motions for a nonsuit and a directed verdict, defendants urge that the plaintiff ought not to recover because he was negligent in not examining the range. There is evidence in the record that makes the following language appropriate:

"Where one assumes to have knowledge of a subject of which another may be ignorant, and knowingly makes false representations regarding it, upon which the other relies to his injury, the party who makes such statements will not be heard to say that the person who took his word and relied upon it was guilty of such negligence as to be precluded from recovering compensation for injuries which were inflicted on him under cover of the falsehood." *David* v. *Moore*, 46 Or. 148, 156 (79 Pac. 415, 417).

To similar effect is *Steen* v. *Weisten,* 51 Or. 473 (94 Pac. 834).

In the instant case the land was situate seventy-five miles from the residence of plaintiff, and, being unable to make a personal examination of the same, he was induced by defendants to rely upon their representations as to its character.

6. In furtherance of their contention, the defendants invoke the following provision of the contract between the parties as precluding oral proof of the representations made by defendants to the plaintiff in the matter of the quality and value of the range.

"The second party (McMenamin & Ward by F. A. McMenamin) makes no representation herein as to the value or grazing quality of said range."

Defendants' position is untenable. The law is otherwise. If a party is guilty of fraud in making a contract, he cannot exculpate himself from the consequences of his own wrong by a provision in writing that his fraudulent oral representations shall not be used as evidence against him in a case in which fraud and deceit is the gist of the cause.

"Parol evidence of false and fraudulent representations inducing one to enter into a written contract is admissible, notwithstanding the contract contains an express recital that there have been no representations, or that all oral representations shall be inoperative." 14 Am. & Eng. Ency. of Law (2 ed.), 200.

The case of *Dieterich et ux.* v. *Rice,* 115 Wash. 365 (197 Pac. 1), is a valuable one illustrating the principle under consideration. That case involved a written contract whereby one Dieterich agreed with the defendant Rice for the purchase of certain lands. The contract contained the following clause:

"This land is sold to second party subject to any and all county roads, and with the understanding that he has personally and carefully inspected said premises and is purchasing the same by said inspection and not from any other sayings or inducements by first party or his agents, and there has been no other inducements other than recited herein, and that no changes or verbal agreements now or hereafter will be binding on either party, unless reduced to writing and signed by both first and second parties."

Thereafter, Dieterich prosecuted a suit to rescind and annul the contract and to recover the sum paid by him on the purchase price. The plaintiff's cause was based on fraud and deceit. After reciting the contents of the complaint and stating the question before the court, Mr. Justice FULLERTON wrote:

"But it is said that the appellants are estopped to urge these representations as fraudulent by the clause of the contract which we have heretofore set forth at length. This contention is so effectually answered by the Court of Appeals of New York in the case of *Bridger* v. *Goldsmith,* 143 N. Y. 424 (38 N. E. 458), that we feel justified in quoting from it somewhat at length. * * The contract of sale was reduced to writing and executed under seal. It contained the following clause: 'It is expressly understood and agreed between the parties hereto that the said party of the first part has not, in any manner or form stated, made or represented to the said party of the second part, for the purpose of inducing the sale of the said business or the making of this agreement, any statements or representations, verbally or in writing, in respect to the said business, other than that the said party of the first part has been engaged in the piano business in the City of New York since 1867.' "

The excerpt quoted from the New York court is, in part, as follows:

"The question now is whether it (clause relating to representations) can be given the effect claimed for it by the learned counsel for the defendant, to preclude the plaintiff from alleging fraud in the sale and pursuing in the courts the remedies which the law gives in such cases. It cannot operate by way of estoppel, for the obvious reason that the statements were false to the defendant's knowledge. He may, indeed, have relied upon its force and efficacy to protect him from the consequences of his own fraud, but he certainly could not have relied upon the truth of any statement in it. A mere device of the guilty party to a contract intended to shield himself from the results of his own fraud, practiced upon the other party, cannot well be elevated to the dignity and importance of an equitable estoppel. If the clause has any effect whatever, it must be as a promise or agreement on the part of the plaintiff that, however grossly he may have been deceived and defrauded by the defendant, he would never allege it against the transaction or complain of it, but would forever after hold his peace. It is difficult to conceive that such a clause could ever be suggested by a party to a contract, unless there was in his own mind at least a lingering doubt as to the honesty and integrity of his conduct. * * Public policy and morality are both ignored if such an agreement can be given effect in a court of justice. The maxim that fraud vitiates every transaction would no longer be the rule, but the exception. It could be applied then only in such cases as the guilty party neglected to protect himself from his fraud by means of such a stipulation. Such a principle would in a short time break down every barrier which the law has erected against fraudulent dealing * * ."

7. It is the law of this state that a nonsuit will not be granted whenever there is some competent evidence produced by the plaintiff in the trial of a cause supporting each material allegation of his complaint. This court has frequently declared that a motion for

a nonsuit is in the nature of a demurrer to the evidence, and that such a motion admits not only all that the evidence proves, but all that it tends to prove: See *Collins* v. *United Brokers' Co.*, 99 Or. 556, 559, 560 (194 Pac. 458, 459), and local citations.

8. The defendants' motion for a directed verdict presents the same question as does their motion for a nonsuit, so far as it relates to the evidence. As said by this court, speaking through Mr. Justice HARRIS, in *Ridley* v. *Portland Taxicab Co.*, 90 Or. 529 (177 Pac. 429):

"A motion for a directed verdict presents the same question for decision as does a motion for a judgment of nonsuit; but the plaintiff is of course entitled to the benefit, not only of his own evidence, but also to the benefit of any evidence favorable to him, though introduced by the defendant: *Huber* v. *Miller*, 41 Or. 103, 110 (68 Pac. 400); *Merrill* v. *Missouri Bridge Co.*, 69 Or. 585, 593 (140 Pac. 439). While a motion for a nonsuit and a motion for a directed verdict give rise to the same inquiry, the result of an approving decision is not the same. A judgment of nonsuit operates merely as a dismissal of the action: Section 184, L. O. L.; *Malloy* v. *Marshall-Wells Hdw. Co.*, 90 Or. 303 (175 Pac. 661); but a judgment on a directed verdict concludes the controversy: *Huber* v. *Miller*, 41 Or. 103, 110 (68 Pac. 400). A motion for a directed verdict as well as a motion for an involuntary judgment of nonsuit challenges the legal sufficiency of the evidence."

The testimony offered by the plaintiff in support of his complaint is strenuously controverted by defendants. But, in the absence of authority to weigh the evidence, we are precluded from determining who has made the better case.

It is asserted that no fraud has been proved, and that "the transaction was square."

The books afford many illustrations of expressions uttered by the courts relating to the degree of proof required to establish fraud. Some of the courts have said that fraud must be established by strong, cogent and convincing evidence, by clear and convincing evidence, by satisfactory and convincing proof: 27 C. J. 64; 12 R. C. L., § 183, p. 436.

9, 10. Under our Code, in a civil action fraud must be established by a preponderance of the evidence, such as is necessary in other civil cases. The rule set down by our Code of Civil Procedure, Section 868, subdivision 5, provides, in effect, that a preponderance of the evidence controls in a civil case. That rule applies in this case, which is a civil one, in which fraud is alleged. While the law casts the burden of proof on the plaintiff to sustain the averments of fraud contained in his complaint, the jury are the exclusive judges of the credibility of the witnesses for the plaintiff and the defendant, and of the weight to be given to their testimony adduced upon the trial.

We have with care read all of the testimony adduced in the trial of this cause, and find that the record discloses some competent evidence in support of each material averment contained in the complaint. Finally,—

"No fact tried by a jury shall be otherwise reexamined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." Section 3c, Art. VII, Constitution of Oregon.

This case is affirmed.

AFFIRMED.    REHEARING DENIED.